IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SACRAMENTO DRILLING, INC., <br><br>    Plaintiff,<br>  v.<br><br>NATIONAL CASUALTY COMPANY, WHITE CONSTRUCTION, LLC, INFRASTRUCTURE AND ENERGY ALTERNATIVES, INC., HARCO NATIONAL INSURANCE COMPANY, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>    Defendants. | Case No.: 3:23-cv-00889-AN<br><br>OPINION AND ORDER |

On October 23, 2023, this Court granted the parties' Joint Motion for Stay, ECF [10], staying this case pending completion of arbitration amongst the parties. Defendant National Casualty Company ("National") filed an Amended Motion to Compel Arbitration, ECF [15], on April 19, 2024, and a Motion for Stay, ECF [21], on May 23, 2024. Oral argument was held on both motions on June 17, 2024. For the following reasons, both motions are DENIED.

## LEGAL STANDARD

When a suit is brought on an issue that is "referable to arbitration under an agreement in writing for such arbitration," the court must, "on application of one of the parties[,] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. When evaluating a motion to compel arbitration, courts should determine: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both inquiries are answered affirmatively, courts must "enforce the arbitration agreement in accordance with its terms." *Id.*

Arbitration is "a way to resolve [ ] disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Parties

1

may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944.

## BACKGROUND

**A.     Factual History**

As relevant to National's motions, the following background is provided. On August 6, 2021, defendant White Construction, LLC ("White") entered into two prime contracts to serve as general contractor for the construction of two projects. Notice of Removal, ECF [1], Ex. A ("Compl."), ¶ 9. On February 3, 2022 and March 10, 2022, plaintiff Sacramento Drilling, Inc. ("Sacramento") and White entered into subcontract agreements for Sacramento's performance of labor and furnishing of materials, equipment, and services for the projects. *Id.* ¶¶ 15-16. Those agreements contained the following arbitration provisions:

> "[M]ediation and binding arbitration shall be the sole methods of dispute resolution for any dispute arising out of this Subcontract or Subcontractor's performance of the Subcontract Work. . . . In Contractor's sole discretion, any arbitration between Contractor and Subcontractor may be consolidated into and become a part of the arbitration proceedings between the Owner and Contractor or between Contractor and another subcontractor, and the consolidated arbitration shall bind Contractor and Subcontractor.
> . . . .
> "If the dispute remains unresolved after the parties mediate the dispute, the dispute shall [be] settled by binding arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules or by an arbitrator agreed upon by the Parties. . . ."

Decl. of Brett Hill ("Hill Decl."), ECF [18], Ex. B, at 2.

National issued two Builder's All-Risk Insurance policies for the projects, effective from September 1, 2021 through November 1, 2022, that covered losses incurred during the construction of the projects. Compl. ¶ 25. White and Sacramento, among other entities, are listed as additional insureds under the policies. *Id.* ¶ 26. The policies contain the following arbitration provision:

> "All differences arising out of this Insurance shall be referred to the decision of an Arbitrator to be appointed in writing by the parties in difference or if they cannot agree upon a single Arbitrator, to the decision of two Arbitrators, one to be appointed in writing

> by each of the parties within one calendar month after having been required so to do by either of the parties or in case the Arbitrators do not agree, of an Umpire appointed in writing by the Arbitrators before entering upon the reference. The Umpire shall sit with the Arbitrators and preside at their meetings and the making of an Award shall be a condition precedent to any right of action against the Insurers."

Decl. of Curt Roy Hineline, ECF [14], Ex. B, at 14.

In April 2022, Sacramento's equipment accidentally severed an overhead de-energized electrical transmission line damaging equipment and property at one of the project sites (the "Incident"). Compl. ¶ 18. On June 3, 2022, White entered into a subcontract with Strategic Construction Solutions, Inc., which is not a party to this case, to perform repair work on the severed transmission line. *Id.* ¶ 20. White issued a deductive change order to Sacramento's subcontract agreement for the repair cost, withholding, in total, $3,490,325.39 from Sacramento's subcontract to pay for the repair work related to the Incident. *Id.* ¶ 21. White ultimately made a partial payment to Sacramento, but Sacramento alleges that $2,654,620.59 remains outstanding. *Id.* ¶ 23.

On June 6, 2022, Sacramento notified National of the Incident and tendered a claim under the insurance policies. *Id.* ¶ 29. On August 24, 2022, National sent a letter to Sacramento and the project owners concluding that the Incident was a covered peril under the insurance policies and that Sacramento was an additional insured. *Id.* ¶ 33. However, National refused to cover Sacramento's total loss of $3,490,325.39 and issued only a partial payment to Sacramento in the amount of $1,798,920.42 based on a visual inspection conducted by a structural engineering firm hired by National. *Id.* ¶¶ 33, 35-36.

**B.**     **Procedural History**

Sacramento subsequently filed suit in Wasco County Circuit Court, and National removed the case to this Court. Sacramento alleges the following claims: (1) breach of contract against White for failure to pay $2,654,620.59 due and payable under the Subcontract; (2) foreclosure of the construction lien against IEA and Travelers for payment under the Lien Release Bond; (3) quantum meruit against White for $2,654,620.59; (4) payment bond against Harco, as the surety of the Performance and Payment Bonds provided to the Projects; (5) two breach of contract claims against National for failing to pay the appropriate amount for loss or damage covered by the policies and enumerated failures/deficiencies in the investigation

process; and (6) negligence *per se* against National. *Id.* ¶¶ 37-84.

On October 12, 2023, Sacramento filed a joint motion for stay wherein all parties agreed that the case should be stayed pending arbitration between Sacramento, White, and National. Joint Mot. for Stay, ECF [10]. That motion was granted on October 23, 2023. Order, ECF [11]. On April 2, 2024, the arbitration panel was finalized, and a preliminary arbitration conference was set for April 26, 2024. National's Am. Mot. to Compel, ECF [15], at 3. When the panel requested that the parties circulate prior pleadings or provide a statement of claims and defenses in advance of the hearing, Sacramento provided its previously filed complaint, which included the negligence *per se* claim against National. *Id.* at 4. On April 3, 2024, National's counsel sent an email to the arbitrators, umpire, and opposing counsel, asking that Sacramento submit a new statement of claim that asserted only contract claims. *Id.* at 4-5. On April 19, 2024, National filed the present Motion to Compel, asking this Court to compel arbitration to proceed only under the insurance policy, and to include only contract claims related to the insurance policy.

On May 3, 2024, Sacramento presented its statement of claim to the arbitration panel, asserting: (1) breach of contract against White under the subcontract agreement; (2) breach of contract against National under the insurance policy; and (3) breach of the duty of good faith and fair dealing against National under the insurance policy. Hill Decl., Ex. D. On May 8, 2024, the parties met with the arbitration panel to discuss how arbitration should proceed given National's objections. Sacramento's Resp. to Mot. to Stay, ECF [25], at 8. The arbitration panel set a briefing schedule to determine whether it had authority to determine the arbitrability of claims and whether the claims submitted in arbitration should be consolidated in one proceeding before the panel. *Id.*; Second Decl. of Curt Roy Hineline, ECF [22], Ex. G, at 1. National subsequently filed a Motion for Stay on May 23, 2024, asking this Court to stay the arbitration proceedings while the Court decides the merits of National's motion to compel. On May 29, 2024, this Court temporarily stayed the arbitration proceedings to assess National's Motion for Stay. Order, ECF [23].

## DISCUSSION

National's motion to compel asks this Court to order the following: (1) the arbitration proceedings may only include contract claims arising out of the insurance policy, and (2) the arbitration

proceedings may not include claims between White and Sacramento arising under the Subcontract Agreement. The Court, however, is not convinced that it has authority at this stage to issue such an order.

Although questions of arbitrability are reserved for judicial determination "[u]nless the parties clearly and unmistakably provide otherwise," "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002) (internal quotation marks omitted) (alterations and emphasis in original). Questions of arbitrability include "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* at 84.

Throughout its briefing, National maintains the position that the issue before the Court is one of arbitrability, not procedure because the dispute involves whether non-contract claims may be asserted in the arbitration proceeding. National relies primarily on *Weyerhaeuser Co. v. Western Seas Shipping Co.*, 743 F.2d 635 (9th Cir. 1984), for its position. However, this case was decided forty years ago, well before the Supreme Court separated procedural questions from questions of arbitrability. Indeed, *Weyerhaeuser* did not even consider who should decide the consolidation issue. As such, its persuasive value on this issue is minimal at best.

More recent cases offer a different perspective. In an unpublished decision, the Ninth Circuit indicated that whether arbitrations should be consolidated is a procedural question best reserved to an arbitrator's determination. *Certain Underwriters at Lloyds v. Cravens Dargan & Co.*, 197 Fed. App'x 645, 646 (9th Cir. 2006) (unpublished). Though this case is not precedential, it aligns with holdings from other circuits. S*ee Empls. Ins. Co. of Wasau v. Hartford*, No. 2:18-cv-07240-CAS-AGRx, 2018 WL 6330425, at *4 (C.D. Cal. Dec. 3, 2018) (collecting cases). It also aligns with the plurality opinion in *Green Tree Financial Corp. v. Bazzle*, wherein the Supreme Court found that the question of whether an arbitration agreement forbade class arbitration asked, "what kind of arbitration proceeding the parties agreed to," not "whether [the parties] agreed to arbitrate a matter," making it a question for the arbitrators. 539 U.S. 444, 452-53 (2003).

At bottom, National's motion involves procedural questions because the threshold questions of arbitrability have already been answered. No party disputes the validity of the arbitration clauses contained in the Subcontractor Agreement and the insurance policy. No party disputes that National, White, and Sacramento are bound by the insurance policy, or that Sacramento and White are bound by the Subcontractor Agreement. No party disputes the scope of claims that may be submitted under either contract.[1] Indeed, the lack of dispute on these issues is precisely why the Court granted the parties' initial joint motion for stay. Thus, the real question raised by National's motion is how these concededly arbitrable claims should be arbitrated—in one proceeding, or two. This question is related to *how* the parties have agreed to arbitrate, not *whether* the parties agreed to arbitrate. As such, this issue is best left to the arbitrators.

## CONCLUSION

Accordingly, defendant National Casualty Company's Motion for Stay, ECF [21], and Amended Motion to Compel, ECF [15], are DENIED.

IT IS SO ORDERED.

DATED this 20th day of June, 2024.

*Adrienne Nelson*
Adrienne Nelson
United States District Judge

---

[1] Although National may disagree as to whether Sacramento's proffered breach of duty of good faith and fair dealing claim is, in fact, a contract claim, this does not change the fact that all parties seem to agree that only contract claims may be arbitrated under the insurance policy.